The bill is filed by the plaintiff as the executor of Norfleet D. Boggan and of his wife, Jane G. Boggan, praying directions and indemnity by a decree of this Court in administering the estates of the two testators, the latter of whom was the executor of the former. Mr. Boggan died in 1854, and his will is as follows:
"First. I give and bequeath to my beloved wife, Jane G. Boggan, all my estate, both real and personal, to raise and educate my children, and to dispose of the same among all my children as their circumstances may seem to require. She is hereby fully authorized to dispose of any of my property, either real or personal, by sale, according to her discretion or the necessities of her family may require. I also appoint her my sole executor of this my last will and testament."
After the death of her husband, Mrs. Boggan took possession of the property, consisting of houses and lots in the town of Wadesboro, slaves, bonds, notes, bank stock, and other personal property, and proceeded to manage the same as her own, maintaining and educating the children until her death, which took place in 1857. Her will is, in substance, that both the real and personal property (which she calls her own) shall remain in common until one of her children shall arrive at 21 or marry, then that one equal share shall be allotted to him or her, and so on for each child as he or she might arrive at 21 or marry, such child taking an equal share with the others under age, in the residue. She also provides that the property given to her daughters, of whom there were *Page 134 
three, should be held by her executor in trust for the sole and separate use of such daughters, so as not to be liable for the debts or liabilities of their husbands in case they should marry, and after their deaths to such persons as they might appoint; but should they die intestate, (158) then to their children; and should either of such daughters die intestate and without issue, then to her brothers and sisters surviving her. That if either of the sons should die under 21 without issue, his share should go to his surviving brothers and sisters and the issues of such as might be dead. She also gave her executor power to sell any part of her estate to carry out the provisions of the will, and appointed the defendant, G. W. Little, her executor.
The bill states that after the death of her husband Mrs. Boggan continued to keep up the family establishment, and kept together the family, consisting of six children (all of whom were under age) at their former residence, in the same way her husband had done, until her death; and in doing so had contracted several debts for the use and benefit of the family, which still remain unpaid; that Mrs. Boggan owned no property of any kind except what she acquired under the will of her husband.
Rosa E. Boggan, after the death of her father, intermarried with the defendant John Bennett, and died without issue, in the lifetime of her mother. Mr. Bennett, the husband, administered on his wife's estate, and claims a share of the estate of Mr. Boggan jure mariti and as her personal representative.
The executor states in his bill that he has permitted the family to continue to reside at the family mansion, and had kept up the establishment in the same way as it was kept up in the lifetimes of the parents, and that this is still the condition of the family, and that in so doing he has had to incur some expenses, but he says there was no provision in the will of either of the testators to meet such a charge.
The executor prays the court to instruct him as to whether Mrs. Boggan took a full legal and equitable title to the whole of the property of her husband, in the hope and expectation that she would use it for the nurture and education of their children, and in her discretion dispose of it among them without investing them with any right or (159) claim in law or in equity, as is contended by some of the claimants. Or whether it was the intention of the husband to confer upon his wife a mere legal estate in the property in trust to sue it in the nurture and education of the children, and then to divide it among them without giving her any beneficial interest in the property, as is contended by others. Or whether the legal estate was conferred on her in trust to manage the property for her own and their benefit, and then to devolve it on the children, subject to be divested by the exercise of a power to divide it among the children as circumstances might seem to *Page 135 
require, which seemed to the executor to be the proper view of the subject. And if the last construction should be the proper one, whether the disposition made by her will was a fair and proper exercise of the power conferred on Mrs. Boggan by her husband's will.
Again, whether in either view Mrs. Boggan had a right to create debts of the character mentioned, in the exercise of her authority under the will, so as to charge the estate of her husband with the same.
Furthermore, whether the executor could rightfully keep the family together at the family mansion after the death of Mrs. Boggan and make charges against the estate in so doing.
Again, what was the nature of the interest conferred by the will on the children, and whether anything vested in Mrs. Bennett, one of them; and if so, whether such interest vested in her husband as her administrator.
Whether, if the legal estate in the real property was vested in Mrs. Boggan, the same was passed by her will to her executor, or did it descend to her children as her heirs at law?
Lastly. Whether the title to the personal property passed to the executor of Mrs. Boggan by force of the will or wills, or the power conferred on her; and if so, on what terms does he hold it, and to what final disposition is it subject?
All the children and Mr. Bennett, the husband of the deceased daughter, Rosa E., are made parties, and answered, not controverting the facts as herein stated.
The cause was set down for hearing on the bill and answers (160) and sent to this Court.
Three constructions of the will are suggested: 1. The legal and equitable title of the whole estate, both real and personal, is given to Jane G. Boggan absolutely, with a recommendation — or rather the expression of an expectation — that she will use it so as to raise and educate the children, and dispose of it among them at her discretion, but without conferring on them any rights, either in law or equity. We do not adopt this construction because it is not justified by the language used and it is against the usual course of things for a father to leave his children entirely dependent on their mother.
2. The legal estate is given to her in trust to raise and educate the children, and in trust to hold all of the estate for them, subject to be divested by a power in her to dispose of it among them as circumstances may seem to her to require, without giving her any beneficial interest *Page 136 
whatever. We do not adopt this construction, because it is evident the testator had a great affection for his wife, and we cannot suppose his intention was to leave her unprovided for and entirely dependent upon the children, so as to force her to dissent from the will and claim the provision which is secured to her by law, and thereby defeat the whole plan of his will.
3. The legal title is given to her in trust to manage the estate, at her discretion, for the support of herself and to raise and educate the children, leaving the reversion of the trust estate, after these purposes are answered, to devolve on the children, subject to be divested by the exercise of a power given to her to dispose of it among all the children as their circumstances may seem to require. This, we think, is the proper construction. It is justified by the language used; it satisfies affection which he entertained for his wife and the natural claims of his (161) children, and it meets the confidence which he seems to have had in the good management and discretion of his wife.
The question then arises, Has the power been exercised so as to divest the estate in the trust which had devolved on the children? The will of Mrs. Boggan does not refer to the power, and no property embraced in it is mentioned specifically, but the whole estate is mentioned and dealt with as if it belonged to her absolutely — which may be accounted for on the supposition that she had adopted the construction of her husband's will which is first suggested above. We are inclined, however, to the opinion that the facts that she owned no property or estate whatever except what she acquired under his will, and that her will purports to dispose of a large estate, indicate with sufficient distinctness an intention to make a disposition of the property embraced by the power, so that her will would be a valid exercise of it except for another objection — which is fatal and renders all of the appointments inoperative and void. The power confided to her was to dispose of the property among all of the testator'schildren as their circumstances may seem to require. Her will does not give the property to the testator's children, but gives it to his grandchildren
or other more remote descendants. The sons are not to have anything unless they arrive at the age of 21 years or leave issue, and the daughters are only to have the use of it for a limited time, to wit, during their lives, and the ownership or absolute property is given to their children, takingas purchasers, with cross-limitations in the event of death without issue. This is not a due exercise of the power. In one point of view it does not go far enough, because only limited and restricted estates are given to the objects of the donor's bounty or the persons embraced in the power. In another point of view it goes too far, because it extends to persons who are not embraced by the power, and consequently fails in both respects to carry *Page 137 
into effect the gift which the testator intended, through her instrumentality, to make to his children. It follows that the appointment must be treated as inoperative, as the scope and extent of the (162) power was clearly mistaken by her; so that the estate in the trust which vested in the children, subject to be divested by the exercise of the power, is not affected by it.
The solution of the many difficulties suggested by the bill is now comparatively easy, and has been, in a great degree, accomplished:
1. Mrs. Boggan being authorized, in her management of the estate, to dispose of any of the property to meet the necessities of the family, or at her discretion, she, of course, had a right to incur debts upon the credit of the estate while it was under her management, and the property is liable for such debts in the hands of her executor.
2. We think her executor was at liberty to allow the family to have the use of the property so as to keep up the establishment, as was done in her lifetime, until the many questions which embarrassed his administration could be settled by a definite construction of the two wills under which he was acting. In taking the account, all proper allowances will be made to him for charges in this behalf.
3. The estate of the children in the trust was vested, consequently Mrs. Bennett had such an equitable interest in the personal estate as would, at her death, devolve on her personal representative, and Mr. Bennett is entitled to it as her administrator. He did not acquire it jure mariti, because it was an equitable estate and was not reduced into possession during coverture.
4. The legal title of the real estate, which was in Mrs. Boggan, did not pass to her executor, and it is not devised to him, consequently it passed to the children as her heirs at law, and the trust estate which they held then merged in it, so they have a perfect title as tenants in common.
5. The legal title of the personal estate passed to her executor by force of the will. He holds it subject to the payment of the debts incurred by her and to an account, which must be taken of his administration, and will then deliver it to the children and those (163) who represent them for the purpose of partition.
PER CURIAM. Decree accordingly.
Cited: Stroud v. Morrow, 52 N.C. 465; Alston v. Lea, 59 N.C. 32;Mason v. Sadler, id., 152; Young v. Young, 68 N.C. 315; Edwards v. Lane,94 N.C. 370; Mabry v. Brown, 162 N.C. 221; Jarrell v. Dyer, 170 N.C. 178. *Page 138